UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOMINIQUE D. BOYD, on behalf of
himself and on behalf of all others
similarly situated,

    Plaintiff,
v.                                    CASE NO.: 8:20-cv-780-T-35JSS

TASK MANAGEMENT STAFFING
INC.,

    Defendant.
_____/

## JOINT MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

Named Plaintiff, Dominique D. Boyd (the "Named Plaintiff"), and Task Management, Inc. ("Task" or "Defendant") (together, the "Parties"), hereby file this Joint Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law, seeking the Court's final approval of the Parties' class action settlement ("Settlement Agreement" or "Agreement") previously filed with the Court as an attachment to ECF No. 43-1.

The Court has already preliminarily approved the Parties' Settlement Agreement. (ECF No. 44). After the Court granted preliminary approval of the Parties' Class Action settlement, the settlement administrator mailed the approved notice to the 5,545 class members. The reaction by class members was overwhelmingly positive. To date <u>zero</u> class members objected and only <u>one</u> opted-out, a nearly perfect result. Practically speaking, little has changed since the Court

issued the Order granting preliminary approval, confirming the Settlement is fair, reasonable, adequate, and warrants final approval. Thus, the Parties respectfully ask that the Court enter the proposed order hereto as Exhibit A. In further support thereof, the Parties state as follows:

## I. BACKGROUND AND OVERVIEW OF SETTLEMENT

Plaintiff filed this lawsuit in state court on February 24, 2020 asserting nationwide class claims against Defendant for violations of the FCRA. (Doc. 1-1). On April 2, 2020, Defendant filed its Notice of Removal pursuant to 28 U.S.C. § 1331. (Doc. 1). Plaintiff's original complaint named both Defendant Task and Pepperidge Farms as defendants. On June 15, 2020 Defendant filed its Answer and Affirmative Defenses. (Doc. 29). Plaintiff voluntarily dismissed Defendant Pepperidge Farms without prejudice on June 24, 2020 (Doc. 30).

Discovery then commenced. Plaintiff propounded interrogatories, requests for production, and sent out third-party discovery to the consumer reporting agency, CEO Information Solutions, Inc., Defendant Task used to obtain the consumer reports at issue in this lawsuit.

After discovery efforts had been completed by Plaintiff's counsel, the Parties mediated the case on a class basis. The first mediation was held on September 22, 2020, before highly respected mediator, Carlos J. Burruezo. Despite the parties being unable to come to an agreement, the Parties agreed to continue their mediation efforts on November 2, 2020 before the same mediator. During that continued mediation, the Parties reached a potential class wide resolution that, if

approved, will resolve the claims of the Named Plaintiff and over 5,000 putative class members.

Specifically, the settlement provides for payments to be made to approximately 5,511 class members. The Agreement calls for the creation by Defendant of a common fund for Class Members consisting of $335,000.00. The Class Members will not be required to take any action to receive a settlement amount, making it a "claims paid" settlement for the class and the subclass. Members of the class (who do not opt out) will receive a *pro rata* gross amount of the settlement fund totaling approximately $60.79.[1] This gross amount is consistent with FCRA class action settlements that have been approved by other federal courts. If the requested amounts are granted for attorneys' fees and a Class Representative service award, Plaintiff anticipates that each (b)(b)(2) class member will receive a net payment of approximately $34.75.[2] No reversion exits. Rather, if any money remains in the net settlement fund after these distributions because Class Members have not cashed their settlement checks within 60 days, those funds shall be paid as a *cy pres* donation to Bay Area Legal Services, Inc., a non-profit organization that provides civil legal assistance to low-income residents in the Tampa Bay region.

---

[1] $335,000.00 / 5,511 class members = $60.79 gross per-class member recovery.

[2] $335,000.00 gross settlement amount - $111,666.66 in attorneys' fees - $609.05 in litigation costs - $26,199 in administrator costs - $5,000 general release payment = $191,525.29 / 5,511 class members = $34.75 net per-class member recovery.

In sum, the proposed settlement is fair and reasonable, and should be granted preliminary approval by the Court.

A. **Allegations included in Named Plaintiff's Complaint**

This is a putative class action brought by Plaintiff against Defendant under the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. ("FCRA"). The lawsuit generally alleges that Defendant violated the FCRA by failing to comply with the FCRA's disclosure and authorization requirements related to consumer reports procured for "employment purposes," and by failing to provide notice before taking adverse action against employment applicants or existing employees based on the contents of a consumer report.

B. **Defendant's Defenses**

Defendant asserted numerous defenses to the FCRA Litigation. Specifically, Defendant denied, and continues to deny, that it violated the FCRA with regard to the Named Plaintiff and/or any putative class members. Defendant further asserted, and continues to assert, that Defendant did not act with the requisite willfulness. Moreover, for example, Defendant asserted, and continues to assert, that Named Plaintiff and the alleged putative class members waived their rights to make claims of this type, are estopped from making these claims, and that they consented to the procurement of the reports.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been

4

alleged against it in the Action, denies that the claims asserted by the Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. The Settlement Agreement and this Joint Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity. However, Defendant agreed to resolve the FCRA Litigation through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

### C.     The Settlement Negotiations and Mediation

As set forth above, the Parties attended two sessions of mediation in this case on a class basis. First, the Parties attempted to resolve this case on a class basis at a mediation held on September 22, 2020. No agreement was reached on September 22, 2020 so the Parties agreed to continue the mediation shortly thereafter on November 2, 2020 before the same mediator. During that continued mediation the Parties reached a potential class wide resolution that, if approved, will resolve the claims of the Named Plaintiff and over 5,511 putative class members. As a result of the agreement reached, the Parties agreed to enter into a settlement agreement (the "Settlement Agreement") attached hereto as Exhibit A, for which they now seek Court approval. The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and

causes of action, present and future, arising from, related to, or based upon the FCRA Litigation as to the Named Plaintiff and all putative class members.

## II. THE PROPOSED SETTLEMENT

### D. The Proposed Settlement Class

The Settlement Agreement defines the proposed Settlement Class "Settlement Class" means individuals who fit one or both of the class definitions set forth in the Complaint, namely:

> All employees and job applicants in the United States subject of a consumer report obtained by Defendant Task for employment purposes who were provided the same disclosure form, attached as Exhibit D to the Motion for Preliminary Approval, from five years preceding the filing of this action through the date of final judgment.

The Parties agree that the Settlement Class is made up of approximately 5,511 individuals. The Settlement Class will not include any individuals who timely and adequately opt out of the settlement.

### E. Benefits to the Settlement Class and Named Plaintiff

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all members of the Settlement Class in exchange for Defendant's agreement to pay $335,000.00 into a settlement common fund. This a "claims paid" settlement. Class members who do not opt out do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Class members who do not opt out will simply receive checks once the Court issues its final approval. If settlement checks are not cashed and after all administrative costs and expenses have been recouped, the Settlement Agreement provides for a donation to a *cy pres*

recipient. If the requested amounts are granted for attorneys' fees, administrative expenses, and a Class Representative Service award, the parties anticipate that each Disclosure Form Settlement Class Member is entitled to a gross amount of $60.79, and will receive a net payment of approximately $34.75.

The Settlement Agreement also provides that Plaintiff's Counsel's fees and service award for the Named Plaintiff are to come out of the fund, subject to the Court's approval. Counsel is authorized to file an unopposed petition for up to 1/3 of the fund as attorneys' fees, plus costs. Dominique Boyd, the Named Plaintiff, shall have, in addition to the claim provided him as a member of the Settlement Class, an additional claim in the sum of $5,000 as a general release payment. Neither settlement approval nor the size of the settlement fund are contingent upon the full amount of any requested fees, costs, of general release payment.

### F. <u>Administration of Notice</u>

The Parties utilized a private, third-party vendor, American Legal Claim Services, LLC, located at 8475 Western Way, Jacksonville, FL 32256, to administer notice in this case. The costs of administration will be paid from the settlement fund.

The Administrator mailed the Court-approved Short-Form Notice, attached to the Settlement Agreement as Exhibit B, by U.S. mail to all Settlement Class members. The Notice informed Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so within 60 days;

(4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court (to be held at least 90 days after Defendant serves the required CAFA notices); and (6) that the Court retains the right to reschedule the final fairness hearing without further notice.

The Settlement Agreement provides that Class members who choose to opt out or object to the settlement may do so within 60 days of the Notice mailing date. If the Court grants final approval of the settlement, Defendant will transfer the net settlement fund to the Settlement Administrator within ten (10) business days of the Court's Final Order. Settlement checks will be mailed to all Class members within 20 days after the Settlement Agreement becomes final and effective, which take place once it is clear that no appeals have been taken or all such appeals have been rejected. To the extent any money remains in the net settlement fund from uncashed checks shall be paid as a *cy pres* donation to Bay Area Legal Services, Inc., a non-profit organization that provides civil legal assistance to low-income residents in the Tampa Bay region.

### G. **Attorneys' Fees and Expenses**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third of the fund as attorneys' fees, plus litigation costs. Class Counsel will file a separate motion seeking approval for fees and costs. Defendant agrees not to oppose the amount of fees and costs sought by Class Counsel, up to the percentage identified herein.

### H. Class Action Fairness Act Notice

The Settlement Administrator will cause notice of the proposed settlement to be served upon the appropriate Federal and State officials, as required by the Class Action Fairness Act of 2005 ("CAFA").

## IV. The Proposed Class Has Been Certified by the Court.

### A. The Certified Class.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* ECF 44). The Parties' original Joint Motion for Preliminary Approval was denied (*see* Doc. 42), after which the Parties submitted a revised version correcting the error pointed out by the Court. The Parties' revised Motion for Preliminary Approval was granted on February 8, 2021. (ECF 44). Since the Court's Preliminary Approval Order, no objections addressing class certification have been made. Thus, the Parties respectfully submit there is no reason to re-visit the Court's prior ruling on certification. If any timely objections are received after the filing of this Motion, but prior to the final hearing, on the discrete issue of certification, the Parties will timely address the same prior to the final approval hearing.

### B. The Class Notice Met the Requirements of Rule 23(c).

Federal Rule of Civil Procedure 23(c)(2)(B) requires that class notice:

> [C]oncisely state in plain, easily understood language:
>
> (i)   the nature of the action;
> (ii)  the definition of the class certified;
> (iii) the class claims, issues, or defenses;

   (iv) that a class member may enter an appearance through an attorney if the member so desires;
   (v) that the court will exclude from the class any member who requests exclusion;
   (vi) the time and manner for requesting exclusion; and
   (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Court-approved Notice satisfies each of these requirements. As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)). Here, the Settlement Administrator exceeded these requirements.

## C. The Settlement is Fair, Reasonable, and Adequate.

In determining whether a proposed settlement is fair, reasonable, and adequate, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (citing *In re CP Ships Ltd. Secs. Litig.*, 578 F.3d 1306, 1317–18 (11th Cir. 2009)).

"[D]etermining the fairness of a [class action] settlement is a discretionary decision for the trial court, though it should be 'informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *United States ex rel. Balko v. Senior Home Care, Inc.*, No. 8:13-CV-3072-T-17TBM, 2017 WL 9398654, at *8 (M.D. Fla. May 2, 2017), *report and recommendation adopted*, No. 813CV03072EAKTBM, 2017 WL 3268200 (M.D. Fla. Aug. 1, 2017).

1. **The Likelihood of Success at Trial Confirms Settlement is Appropriate.**

Continuing the FCRA Litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses Task intended to assert if the case was not settled. From Plaintiff's perspective, there was a risk the Court would accept one or more of Task's arguments on a key point and dismiss the case, grant summary judgment, or refuse to certify the Class. Plaintiff's success on any of these aspects in motions practice, let alone at trial, was not guaranteed. And, of course, Plaintiff still faced the uphill battle of proving willfulness at trial even if he survived dispositive motions and was successful in certifying the Class. There is no certainty that continued litigation would provide a better outcome than the settlement. This factor therefore favors a finding that the Settlement is fair, reasonable, and adequate. *Youngman v. A&B Ins. & Fin., Inc.*, No. 616CV1478ORL41GJK, 2018 WL 1832992, at *7 (M.D. Fla. Mar. 22, 2018), *report*

*and recommendation adopted*, No. 616CV1478ORL41GJK, 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018) (approving settlement where plaintiffs faced similar difficulties of proof at trial).

Courts reviewing the issue of fairness have favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001); *Pinsker v. Borders Group, Inc. (In re BGI, Inc.)*, 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012) (approving class settlement with 17% cap on total liability, on grounds that "Class Members would have received nothing if they were not successful). Therefore, it is reasonable for the Class Members to take the bird in the hand instead of the prospective flock in the bush") (citations omitted); *Smith*, 2007 U.S. Dist. LEXIS 85551, at *15 (approving class settlement where, "Plaintiffs concede that their case against the [] Defendants is not a sure success"). This factor supports final approval.

### 2. The Recovery in the Settlement is Substantially Above the Minimum that Class Members May Recover at Trial.

The Settlement represents a gross recovery of approximately $60.79.[3] settlement per Class Member, and a $$34.75 net[4] payment, both of which are in line with settlement amounts in similar cases involving claims brought under the FCRA. In his Complaint, Plaintiff seeks to recover compensation under 15 U.S.C. § 1681n(a)(1)(A), (2), and (3) for himself and the other Class Members consisting of (a) statutory damages of not less than $100.00 and not more than $1,000.00; (b) punitive damages, (c) attorney's fees and costs.

However, as Section 1681n(a) of the FCRA indicates, proof of noncompliance with the technical requirements of the FCRA alone does not impose liability on a defendant. Recovery of damages under Section 1681n(a) is contingent on establishing that the Defendant willfully failed to comply with the FCRA; negligent noncompliance is not sufficient. *Safeco v. Burr*, 127 S. Ct. 2201, 2215 (2007); 15 U.S.C. § 1681n(a). And, even if liability for willful noncompliance is established as Plaintiff believes, the determination as to the size of the award is left to the discretion of the jury, which may return an award of no damages as a possible outcome.

The settlement proposed in the Agreement secures a gross monetary payment to each claiming Settlement Class Member in the approximate amount of $60.00.

---

[3] $335,000.00 / 5,511 class members = $60.79 gross per-class member recovery.

[4] $335,000.00 gross settlement amount - $111,666.66 in attorneys' fees - $609.05 in litigation costs - $26,199 in administrator costs - $5,000 general release payment = $191,525.29 / 5,511 class members = $34.75 net per-class member recovery.

Class Counsel believes that the proposed payment to each member of the Class is a very good settlement, providing more relief to Class Members than other recently approved settlements. The district court in *Hillson v. Kelly Services Inc.*, summarized the results of such settlements as follows:

> The results counsel achieved for the class were good. The gross recovery (i.e., recovery before fees and other expenses are taken from the fund) is $30.00 per Class Member (on average). This appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. *See Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25.00 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), report and recommendation adopted, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33.00, $40.00, and $44.00).

2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017).[5]

The settlement proposed in the Agreement falls within the reasonable range of possible recovery for members of the settlement classes. "A proposed settlement

---

[5] *See, e.g., Fosbrink v. Area Wide Protective*, No. 8:17-cv-1154 ($39 gross recovery); *Speer v. Whole Food Mkt. Grp., Inc.,* No. 8:14-CV-3035-T-26TBM, Doc. 68 (M.D. Fla. January 1, 2016)(final Order entered by Judge Lazzara approving $40 gross recovery for FCRA class members); *Landrum v. Acadian Ambulance Serv., Inc.*, No. 4:14-cv-01467 (S.D. Tex. June 29, 2015) (Doc. 37) (granting final approval of settlement that provides $10 per class member); *Fernandez v. Home Depot, U.S.A. Inc.*, No. 8:13-cv-00648-DOC (C.D. Cal. April 20, 2015) (Doc. 59) (class members to receive $10.00 in FCRA class case).

14

need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010). Balancing the risk that liability cannot be established against Defendant for willful violations of the disclosure and authorization provisions of the FCRA against the range of possible recovery of damages supports settlement. Thus, this factor cuts sharply in favor of final approval by this Honorable Court of the Parties' settlement.

### 3. Continued Litigation will be Complex, Expensive and Resource-Consuming.

There is an inherent and substantial expense to continued litigation. If a settlement had not been reached, Plaintiff and Defendant both would have filed summary judgment motions. If Plaintiff were to prevail, the action would have proceeded to trial on damages, with the significant expense and use of resources that accompanies trial preparation. Defendant would likely seek interlocutory review of the class certification decision, requiring additional time and briefing.

If Defendant was to prevail on a case dispositive motion, Plaintiff most likely would appeal. A summary-judgment victory for Defendant would not conclude the case, as successful appeal by Plaintiff would perpetuate the litigation. Under any scenario, Class Members would be deprived of any relief for a significant length of time.

Class and Defense Counsel are experienced litigators, who reached this Settlement with the assistance of an experienced mediator. In fact, the case was

not settled until after substantive written discovery was conducted (including third-party discovery), and only after two separate mediation sessions conducted separately by a highly-respected class action mediator, Carlos J. Burruezo. Simply put, both sides unquestionably possessed sufficient information to evaluate their respective positions. Both sides strongly recommend that the Court approve the Settlement. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement . . . counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case. This factor also weighs in favor of final approval by the Court.

### 4. There is No Opposition to Any Aspect of the Settlement.

As noted above, nearly all Class Members have been notified of the Settlement. None objected. Only one person asked to be excluded. Class Counsel is not surprised at a lack of objections and the overall turnout - the Settlement is an excellent result for the Class. The complete absence of opposition to the Settlement favors a finding that it is fair, reasonable, and adequate. *James v.*

*JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) ("The absence of opposition to the settlement militates heavily toward approval."); *Allapattah Servs. v. Exxon Corp.*, 2006 U.S. Dist. Lexis 88829 (S.D. Fla. 2006); *see also, Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Camp v. City of Pelham*, 2014 U.S. Dist. Lexis 60496, at *11 (N.D. Ala. May 1, 2014) (the fact that no objections were received "points to the reasonableness of [the] proposed settlement and supports its approval" (citations omitted)); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (stressing that "[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections'").

Therefore, this critical factor weighs heavily in favor of final Court approval of the settlement.

### 5. The Settlement was Reached at an Appropriate Stage of Proceedings.

This factor focuses on assuring that "the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *United States ex rel. Balko*, 2017 WL 9398654, at *12. In this case, Plaintiff certainly did. In fact, the case was not settled until after substantive written discovery was conducted (including third-

party discovery), and only after two separate mediation sessions conducted separately by a highly-respected class action mediator, Carlos J. Burruezo.

By way of background, Plaintiff filed this lawsuit in state court on February 24, 2020 asserting nationwide class claims against Defendant for violations of the FCRA. (Doc. 1-1). On April 2, 2020, Defendant filed its Notice of Removal pursuant to 28 U.S.C. § 1331. (Doc. 1). Plaintiff's original complaint named both Defendant Task and Pepperidge Farms as party-defendants.

Next, on June 15, 2020 Defendant filed its Answer and Affirmative Defenses. (Doc. 29). Plaintiff voluntarily dismissed Defendant Pepperidge Farms without prejudice on June 24, 2020 (Doc. 30). Discovery then commenced. (Hill Decl., ¶ 18). Plaintiff propounded interrogatories, requests for production, and sent out third-party discovery to the consumer reporting agency, CEO Information Solutions, Inc., Defendant Task used to obtain the consumer reports at issue in this lawsuit. (Hill Decl., ¶ 18).

After significant discovery efforts had been completed by Plaintiff's counsel, the Parties mediated the case on a class basis. (Hill Decl., ¶ 19). The initial mediation was held on September 22, 2020, before highly respected mediator, Carlos J. Burruezo. (Hill Decl., ¶ 20). While the parties could not reach an agreement on September 22, 2020, the Parties agreed to continue the mediation on November 2, 2020, before the same mediator. (Hill Decl., ¶ 21). During that continued mediation, the Parties reached a potential class wide resolution that, if

18

approved, will resolve the claims of the Named Plaintiff and over 5,000 putative class members. (Hill Decl., ¶ 22).

Based on this record, class counsel is satisfied the case has been thoroughly investigated. Thus, the Court should conclude that this factor also favors granting final approval. *See Poertner v. Gillette Co.*, No. 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *4 (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 F. App'x 624 (11th Cir. 2015) (finding similar facts weighed in favor of approval of settlement); *Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator").

## V.   Conclusion.

The Agreement is in the best interest of the Parties and Class, was reached through arm's-length negotiations through a well-respected mediator and is fair and reasonable to all concerned.

**WHEREFORE**, the Plaintiff and Defendant respectfully request that the Court enter a Final Order: (1) granting final approval of the Settlement Agreement between Named Plaintiff, on his own behalf and on behalf of the Settlement Class, and Defendant; (2) certifying the above-described Settlement Class for settlement purposes; and, (3) requiring the Parties to comply with the terms and conditions in the Settlement Agreement or pursuant to the Court's Order granting Final Approval. A proposed order is attached hereto as Exhibit A.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for the Parties have conferred and agree to the relief requested herein.

DATED this 5th day of April, 2021.

Respectfully submitted,

| WENZEL FENTON CABASSA, P.A. | COLE, SCOTT & KISSANE, P.A. |
|---|---|
| */s/ Brandon J. Hill* | */s/ Jillian Sidisky* |
| **LUIS A. CABASSA** | **S. JONATHAN VINE** |
| Florida Bar Number: 053643 | **Florida Bar Number: 010966** |
| **BRANDON J. HILL** | **JILLIAN SIDISKY** |
| Florida Bar Number: 37061 | Florida Bar No.: 113611 |
| Wenzel Fenton Cabassa, P.A. | Cole, Scott & Kissane, P.A. |
| 1110 North Florida Ave., Suite 300 | 222 Lakeview Avenue, Suite 120 |
| Tampa, Florida 33602 | West Palm Beach, FL 33401 |
| Main No.: 813-224-0431 | Telephone: 561-383-9200 |
| Facsimile: 813-229-8712 | Facsimile: 561-683-8977 |
| Email: lcabassa@wfclaw.com | E-mail: jonathan.vine@csklegal.com |
| Email: bhill@wfclaw.com | E-mail: jillian.sidisky@csklegal.com |
| Attorneys for Plaintiff | Attorneys for Defendant |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 5th day of April, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**